Franklin E. Skepton, t/a Franklin E. Skepton, General Contractor, and Northampton Area School District *v.* Borough of Northampton. Franklin E. Skepton t/a Franklin E. Skepton, General Contractor, Appellant.

Argued December 10, 1984, before Judges WILLIAMS, JR., PALLADINO and Senior Judge BARBIERI, sitting as a panel of three.

*Mark S. Refowich, Fishbone, Refowich & Scheer,* for appellant.

*Judith A. Dexler,* with her, *Martin J. Karess, Karess & Reich Law Offices,* for appellee, Borough of Northampton.

OPINION BY JUDGE WILLIAMS, JR., January 9, 1985:

Franklin E. Skepton, a general contractor, contracted with Northampton Area School District to renovate an elementary school building situate in the Borough of Northampton. On August 6, 1982, the borough commenced an equity action seeking to prohibit work on the project pending Skepton's payment of $3710 for a building permit as required by local ordinance. Ordinance No. 915, entitled ''Building Code of the Borough of Northampton,'' requires that a permit be obtained prior to beginning construction work. By agreement of the parties, the school dis-

trict, which was not a participant in the equity proceeding, placed $3710 in escrow with the Court of Common Pleas of Northampton County, and the work continued.

Skepton and the school district then instituted a declaratory judgment action in the common pleas court to determine whether the Commonwealth had pre-empted local regulation of the school construction project, especially regarding building permit fees and site inspections. After trial, the chancellor issued an adjudication and decree nisi which provided that the building code ordinances were not pre-empted and directed that the $3710 was to be paid to the borough. This appeal ensued from the entry of the final decree, which followed dismissal of Skepton's exceptions.

The borough is statutorily authorized to enact and enforce building ordinances that provide for, *inter alia,* prior approval of building plans, the appointment of inspectors and on-going inspections of work sites. Section 1202(24) of the Borough Code, Act of February 1, 1966, P.L. (1965) 1656, *as amended,* 53 P.S. §46202(24). The borough may further prescribe reasonable fees for its officers' services and enforce payment. Pursuant to this authority the borough enacted a series of ordinances which adopted the "BOCA Basic Building Code," created a code inspection and enforcement office, and required—prior to the initiation of work—the purchase of building permits at $3.00 for each $1000 of construction costs.

Skepton primarily argues that three statutes—the Fire and Panic Act,[1] the Public School Code of 1949[2]

---

[1] Act of April 27, 1927, P.L. 465, *as amended,* 35 P.S. §§1221-1235.

[2] Act of March 10, 1949, P.L. 30, *as amended,* 24 P.S. §§1-101 through 27-2702.

and The Administrative Code of 1929[3]—pre-empt local regulation of school construction projects, thereby negating the building permit fee requirement.[4] State pre-emption of municipal regulation of local activities can be either explicit or, if the statute is silent on supercession, implicit, upon state and local regulatory powers actually and materially conflicting. *Holland Enterprises, Inc. v. Joka,* 64 Pa. Commonwealth Ct. 129, 439 A.2d 876 (1982). A local ordinance is therefore superceded to the extent it contradicts or is inconsistent with a statute that is not explicitly pre-emptive. *Id.* Municipalities, however, pursuant to their subordinate police power, may promulgate supplemental or additional regulations that are reasonable and do not offend the spirit of state regulatory provisions. *Id.*

We reject the contention that the borough's building code is pre-empted by the Fire and Panic Act. Section 8 of the Act, 35 P.S. §1228, pertinently states:

No such building or structure shall be erected, adapted, remodeled, or altered, until such plans have been examined and approval given by the Department of Labor and Industry, *and a building permit obtained in municipalities where such permit is required by ordinance.* (Emphasis added.)

Additionally, Section 37.3 of the Fire and Panic Regulation, 37 Pa. Code §37.1, which were then applicable, provided that "[t]hese rules shall be understood not

---

[3] Act of April 9, 1929, P.L. 177, *as amended,* 71 P.S. §§51-732.

[4] The construction contract obligates Skepton to obtain and pay for the building permit and for all other permits "necessary for the proper execution and completion of the Work which are customarily secured after execution of the Contract and which are legally required at the time the bids are received." This language notwithstanding, Skepton did not include the building permit fee in his bid.

to limit the power of cities, towns, and villages to make or enforce additional or more stringent regulations.'' The Fire and Panic Act and regulations, therefore, do not preclude municipal construction standards that are supplementary to, or more stringent than, state standards. *See School District of Philadelphia v. Zoning Board of Adjustment*, 417 Pa. 277, 286, 207 A.2d 864, 869 (1965).

We also reject the assertion that the Public School Code of 1949 (School Code) supercedes the borough's building code ordinances. The School Code contains no explicit pre-emption language. Moreover, Section 21.81 of the Education Regulations, 22 Pa. Code §21.81, which concerns final plan approval by the Department of Education (Department), states in part:

> The board of school directors shall submit to the Department certification of all necessary approvals from local, regional, and state agencies relating to health, safety, design, planning highway access, and freedom from flooding and subsidence.

By implication the Department regulations permit local regulation of school building construction that is supplemental to, or consistent with, state standards.

The chancellor found that the borough's building code authorizes local inspection of a building's structural integrity, plumbing, mechanical and electrical systems. The School Buildings provisions at Chapter 21 of the Education Regulations, 22 Pa. Code §§21.1-21.83, primarily encompass a school building's cost-quality, interior space relationships, space allocation, site selection, educational design specifications and necessity, given enrollment projections and a school district's longe-range educational plan. Since the Department's regulations and the borough's building

code regulate predominately different concerns of school building construction, state and local powers are not in actual, material conflict.[5] *See Holland Enterprises, Inc.* Nor does Skepton suggest how the building code's permit and inspection requirements would frustrate the stated purpose of the School Building regulations to, *inter alia*, provide for the health and safety of the school's occupants. *See,* 22 Pa. Code §21.1; *see also, School District of Pittsburgh v. City of Pittsburgh,* 23 Pa. Commonwealth Ct. 405, 352 A.2d 223 (1976) (school districts must apply for municipal building permits prior to constructing or renovating school buildings).

Section 2414 of The Administrative Code of 1929 (Administrative Code), 71 P.S. §644, empowers the State Art Commission to approve the design and proposed location of all public buildings pursuant to the Act of May 1, 1919, P.L. 103, 71 P.S. §§1671-73. These provisions neither pre-empt explicitly nor materially conflict with the building code's focus on structural integrity, plumbing, mechanical and electrical systems.

We therefore conclude that the borough's building code's permit and inspection requirements, as applied to the elementary school renovation project, are not pre-empted by the Fire and Panic Act, School Code and Administrative Code.

Skepton next argues that if local inspections of school construction projects are impermissible be-

---

[5] We note that the chancellor found that Department of Labor and Industry building inspectors investigate for compliance with fire safety, panic hardware and means of egress standards. Labor and Industry employes also do not inspect a building's structural integrity, bearing capacity, plumbing, mechanical and electrical systems. The project's architect or engineer must certify to the adequacy of these features. *See e.g.,* 34 Pa. Code §37.25 (structural requirements).

cause of state pre-emption, the building permit fees, which are assessed against such projects in order to finance inspections, then constitute a prohibited indirect tax. We have determined, however, that local inspection of this school construction project is not pre-empted, and that a borough building permit is required. Hence, a reasonable charge for building permits is permitted. *See* Section 1202(1) of the Borough Code, 53 P.S. §46202(1).

We accordingly affirm the order of the Common Pleas Court of Northampton County.

ORDER

AND Now, this 9th day of January, 1985, the Order of the Court of Common Pleas of Northampton County, dated August 3, 1983, is affirmed.