551 A.2d 380

Consulting Engineers Council of Pennsylvania, L. Robert Kimball t/d/b/a L. Robert Kimball and Associates, and Sanders and Thomas, Inc., Petitioners *v.* Commonwealth of Pennsylvania, State Architects Licensure Board and George L. Shevlin, Commissioner of Professional and Occupational Affairs, Respondents.

Argued October 31, 1988, before Judges DOYLE and SMITH, and Senior Judge BARBIERI, sitting as a panel of three.

*Victor P. Stabile, Dilworth, Paxson, Kalish & Kauffman,* for petitioners.

*Mary B. Seiverling,* Deputy Attorney General, with her, *John G. Knorr, III,* Chief Deputy Attorney General, Chief of Litigation Section, and *LeRoy S. Zimmerman,* Attorney General, for respondents.

*Kathryn Speaker MacNett, Baskin, Flaherty, Elliott, Mannino & Beren, P.C.,* for Amicus Curiae, Pennsylvania Society of Architects.

*Robert J. Shusterman,* for Amicus Curiae, Elizabeth Lawson, AIA, et al.

OPINION BY SENIOR JUDGE BARBIERI, December 9, 1988:

Before the Court are cross-motions for summary judgment in a declaratory action addressed to the original jurisdiction of this Court pursuant to Section 761(a) of the Judicial Code, 42 Pa. C. S. §761(a). The Petitioners in this action are (a) the Consulting Engineers Council of Pennsylvania, a trade association representing approximately 120 consulting engineering firms in Pennsylvania, (b) L. Robert Kimball, t/d/b/a L. Robert Kimball and Associates, a consulting engineering firm which provides architectural and design services, and

(c) Sanders and Thomas, Inc., an architectural and engineering design corporation (collectively Petitioners).

Respondents are the State Architects Licensure Board (Board) and George L. Shevlin, Commissioner of Professional and Occupational Affairs (collectively Respondents).[1] Petitioners seek an opinion permanently enjoining and declaring the Board's regulation at 49 Pa. Code §9.165 invalid as being in conflict with Section 13(j) of the Architects Licensure Law (Law), Act of December 14, 1982, P.L. 1227, 63 P.S. §34.13(j). We deny Petitioners' motion and grant Respondents' motion for summary judgment upholding the regulation.

The Architects Licensure Law sets forth the general statutory scheme for the licensing, practice and professional conduct of architects in Pennsylvania. Section 2 of the Law, 63 P.S. §34.2, provides that "no person shall engage in the practice of architecture in this Commonwealth except in compliance with the requirements of this act." Section 6 of the Law, 63 P.S. §34.6, grants the Board the power to establish regulations to carry out the provisions of the Law. Section 13 of the Law, 63 P.S. §34.13, regulates the practice of architecture by firms which, according to Section 13(a), may be structured as a sole proprietorship, partnership, professional association, professional corporation, or business corporation.

Sections 13(b) through (f) of the Law require that in any firm practice a minimum of two-thirds of the partners or board of directors must be licensed in any state to practice architecture, engineering or landscape architecture, and that at least one-third of the partners

---

[1] The Pennsylvania Society of Architects, a non-profit corporation which serves as a professional association for licensed architects in Pennsylvania, has filed an *amicus curiae* brief in support of Petitioners' motion. Thirteen individual architects licensed in Pennsylvania have also filed an *amicus curiae* brief in opposition to Petitioners' motion.

or members of the board of directors must be licensed architects. In the case of a corporation, at least one-third of the outstanding voting stock must be owned by licensed architects. The objective of this minimum one-third architect ownership requirement is, as expressed by the Board, to ensure that only responsible professional firms with adequate training offer architectural services to the public. However, Section 13(j) of the Law seemingly creates an exception to this statutory ownership scheme by stating:

(j) Nothing in this section shall be construed to prevent the practice of architecture by an individual as an employee of a person, partnership or corporation which is not an architectural firm, provided such individual holds a certificate to practice architecture in the Commonwealth in conformity with the provisions of this act and the architect's seal is affixed to all documents prepared by him or under his personal supervision for use in this Commonwealth.

Petitioners are engineering and design firms who do not meet the ownership requirements of Sections 13(b) through (f) of the Law and are consequently by definition not architectural firms. Section 13(j) of the Law allows Petitioners to simply hire architects as employees and compete directly with architectural firms in offering architectural services to the public while evading the ownership requirements of Sections 13(b) through (f) of the Law.

To plug this perceived loophole the Board enacted 49 Pa. Code §9.165 which provides:

Section 9.165. Architect as employe.

Nothing in this chapter may be construed to prevent the employment of an architect by a business which is not engaged in the practice of architecture as defined in section 3 of the act (63 P.S. Section 34.3), if the work performed by the

employed architect concerns the modification of or the origination and supervision of the design or the construction of structures, or both, *which the employer intends to utilize for its non-architectural business purpose. . . .*

(Emphasis added.)

The Board interpreted this regulation in its notice of proposed rule-making at 16 Pa. Bulletin 1567 (1987) as permitting a nonarchitectural firm to only employ a staff architect for a nonarchitectural business *purpose.* The example the Board gives is that a business may hire a staff architect to modify its own structures, such as a hospital adding new entrances or an additional wing. Petitioners contend that this regulation restricts the scope of their practice and prohibits engineering firms from offering complete design, architectural and engineering packages to the public. They argue that the sole purpose of the regulation is to hinder engineering firms from entering the design market by forcing them to reorganize their ownership structure in order to comply with Sections 13(b) through (f) of the Law. Consequently, Petitioners attack 49 Pa. Code §9.165 as facially inconsistent with Section 13(j) of the Law.

We must initially determine whether 49 Pa. Code §9.165 is adopted pursuant to the Board's *legislative* rule-making power or, as Petitioners urge, its *interpretative* rule-making power. A legislative rule is the product of an exercise of legislative power by an administrative agency, pursuant to the grant of legislative power. It is valid and binding upon a court as a statute if it is (a) within the granted power, (b) issued pursuant to proper procedure, and (c) reasonable. *Pennsylvania Human Relations Commission v. Uniontown Area School District,* 455 Pa. 52, 313 A.2d 156 (1973). By contrast, the validity of an interpretative rule rests upon the willingness of a reviewing court to say that it tracks the meaning of the statute it interprets as a matter of

law. *Uniontown Area School District; Murphy v. Township of Abington,* 88 Pa. Commonwealth Ct. 491, 490 A.2d 483 (1985).

We conclude that 49 Pa. Code §9.165 is a legislative rule enacted pursuant to a specific grant of legislative power in Section 6 of the Law and the Board's interpretation of this rule in 16 Pa. Bulletin 1657 (1987) is of controlling weight unless it is plainly erroneous or inconsistent with the regulation. *Uniontown Area School District.* Our scope of review is therefore limited to (1) whether the Board's interpretation is consistent with the regulation and (2) whether the regulation is consistent with the statute under which it is promulgated. *Pelton v. Department of Public Welfare,* 514 Pa. 323, 523 A.2d 1104 (1987); *Commonwealth v. DePasquale,* 509 Pa. 183, 501 A.2d 626 (1985).

Since the Board's interpretation of 49 Pa. Code §9.165 is consistent with the regulation's intent to restrict the employment of architects by engineering firms to non-architectural business purposes, we must inquire as to whether this regulation is contrary to the legislative intent espoused by the statutory scheme of the Architects Licensure Law. *Serefeas v. Nationwide Insurance Co.,* 338 Pa. Superior Ct. 587, 488 A.2d 48 (1985); *Tiani v. Department of Public Welfare,* 86 Pa. Commonwealth Ct. 640, 486 A.2d 1016 (1985).

Petitioners urge us to hold that 49 Pa. Code §9.165 directly contravenes Section 13(j) of the Law. However, we cannot view Section 13(j) in isolation, it must be read in *pari materia* with the rest of Section 13 to ascertain the legislative intent. *Westmoreland Manor v. Department of Public Welfare,* 91 Pa. Commonwealth Ct. 155, 496 A.2d 1282 (1985); 1 Pa. C. S. §1932. The legislative scheme set up by Section 13 is quite simple, namely that individual architects or groups of architects who desire to practice architecture must do so as part of an "architectural firm," as defined by the firm owner-

ship requirements of Sections 13(b) through (f). Section 13(j), if construed according to Petitioners' wishes, completely emasculates the rest of the statute. There is no reason for any firm to go through the requirements of becoming licensed as an architectural firm under Sections 13(b) through (f) if the firm can simply hire an architect under Section 13(j) who can offer the same services. We will not permit the exception to destroy the rule. 49 Pa. Code §9.165 is consistent with the legislative intent of Section 13 to restrict the practice of architecture to architectural firms.

It is our obligation to reconcile, wherever possible, seemingly inconsistent statutes or regulations so as to give effect to each. *Appeal of Yerger*, 460 Pa. 537, 333 A.2d 902 (1975); *In Re Appeal of Atlantic Richfield Co.,* 79 Pa. Commonwealth Ct. 285, 468 A.2d 1208 (1983). Section 13(j) permits an individual licensed architect to practice architecture as an employee of a non-architectural firm. It does not state that a non-architectural firm may practice architecture. 49 Pa. Code §9.165 does prohibit a non-architectural firm from practicing architecture. The two provisions may be reconciled as permitting an individual architect to work for an engineering firm and practice architecture, so long as the engineering firm uses the architect for its own internal purposes and does not propose to market architectural services to the public at large.

This interpretation is consistent with the Board's promulgation at 16 Pa. Bulletin 1657 (1987) and comports with the general statutory scheme of Section 13 of the Law that only architectural firms may offer architectural services to the public. 49 Pa. Code §9.165 does not conflict with the individual's right as an architect under Section 13(j) to work for a non-architectural or engineering firm. Rather it restricts the firm's options as to what it can do with this employee's services. But Section 13(j) is not intended to protect the non-archi-

tectural firm, it speaks to the rights of the individual architect. Consequently, Petitioners cannot use Section 13(j) as a defense against 49 Pa. Code §9.165 in order to evade the remaining provisions of Section 13 of the Law. Summary judgment is properly granted to Respondents.

ORDER

NOW, December 9, 1988, Respondents' motion for summary judgment is granted and Petitioners' motion for summary judgment is denied.